IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00532-M

DARRYL COOK, )
)
Plaintiff, )
)
v. ) ORDER
)
REWARDS NETWORK, )
)
Defendant. )

This matter comes before the court on Plaintiff's Motion to Remand [DE 11], Defendant's Motion to Compel Arbitration and Dismiss or Stay [DE 14], and Plaintiff's Motion for Leave to File Surreply [DE 24]. The motions are briefed to the extent required by federal and local rules and the court is fully apprised. For the reasons that follow, Plaintiff's motion to remand is denied, Plaintiff's motion to file surreply is granted, and Defendant's motion to compel is granted.

**I.    Background**

Plaintiff initiated this action on September 8, 2020 in the District Court of Wake County, North Carolina, alleging that Defendant violated the North Carolina Debt Collection Act. *See* Compl. DE 1-1. On October 7, 2020, Defendant removed the action to this court alleging the court's diversity jurisdiction; specifically, in reliance on the Complaint's allegations, Defendant asserts that the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Notice of Removal, ¶ 5, DE 1.

Plaintiff filed the present motion to remand on October 21, 2020, arguing that the court lacks subject-matter jurisdiction because the amount in controversy does not necessarily exceed

$75,000.00. Defendant counters that prevailing law holds that the jurisdictional amount is that which is alleged in the Complaint at the time of removal, and the Complaint specifically seeks $300,000.00 in monetary damages.

Defendant also filed the present motion to compel arbitration, contending that Plaintiff's company, Cook Hospitality LLC d/b/a Der Biergarten ("Cook Hospitality"), executed a Receivables Purchase and Marketing Agreement with Defendant on June 19, 2019, and the Agreement contains a provision permitting either party to require that any claim or dispute relating to the Agreement or the parties' dealings with each other be resolved through binding arbitration. Plaintiff counters that he "disput[es] the agreement in full (including the arbitration clause) – thereby not binding the Plaintiff to arbitration." Resp. at 1, DE 21. Following Defendant's reply brief, Plaintiff filed the present motion seeking leave to file a surreply on December 15, 2020, saying he "contests the legal standards and facts with regards to the compelling of arbitration," purportedly set forth in the reply brief. Defendant did not file a response to this motion.

Because the Plaintiff's motion to remand challenges the court's subject-matter jurisdiction, the court will address the motion first, then proceed, if necessary, to address the remaining motions.

## II.     Motion to Remand

Defendants are permitted to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. "If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008).

Here, Defendant alleges this court's diversity jurisdiction to support its removal of the action. Notice, ¶ 5. Removal based on diversity is proper when the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). As stated, Plaintiff's challenge to Defendant's removal and this court's jurisdiction is based on the amount in controversy. "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (citing 28 U.S.C. § 1446(c)(2)); *see also Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) ("If diversity of citizenship, under 28 U.S.C. § 1332(a), provides the grounds for removal, then 'the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . .'" (quoting 28 U.S.C. § 1446(c)(2))).

In this case, the operative Complaint reflects the Plaintiff's "Prayer for Relief," in pertinent part, as follows:

```
WHEREFORE, Plaintiff prays:
1. For general damages according to proof; $ 150,000
2. For special damages according to proof; $ 150,000
```

Compl., DE 1-1. There is no indication that Plaintiff's prayer has been made in bad faith. Therefore, the amount in controversy in this case is at least $300,000.00.

Plaintiff argues that "it is undetermined at this moment of time whether the matter will result in higher or lower amounts than $75,000 being awarded, and the Plaintiff is willing to amend [his] complaint to ask for damages less than $75,000 if it means that [he] can litigate the instant matter in state court where the standards are different and the matter involves mainly state law claims." Reply, ¶ 16, DE 22. Notably, Plaintiff has neither amended nor attempted to amend his complaint in this case; even if he had, however, prevailing law instructs that the court would

3

maintain subject-matter jurisdiction in this case.

The removability of a case "depends upon the state of the pleadings and the record at the time of the application for removal . . . ." *Francis*, 709 F.3d at 367 (citing *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906) and *Pullman Co. v. Jenkins*, 305 U.S. 534, 538 (1939)). "If the complaint in good faith alleges a sufficient amount in controversy, '[e]vents occurring subsequent' to the filing of the complaint 'which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938)). In other words, "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury*, 303 U.S. at 293.

Accordingly, even had the Plaintiff amended his complaint after removal of the action to this court, such amendment would be insufficient to remove the court's subject-matter jurisdiction, which is established at the time of removal. Here, it is undisputed that the Plaintiff's initial Complaint, which remains the operative pleading in this case, seeks recovery for general and special damages in the amount of $300,000.00. As such, and as no party disputes they are diverse in citizenship, the court finds it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff asserts no other challenge to Defendant's removal; therefore, Plaintiff's motion is denied.

### III. Motion for Leave to File Surreply

In this district, Local Rule 7.1 permits the filing of a response to a motion and a reply in support of the motion. Local Civ. R. 7.1. Courts in this district generally allow a party to file a surreply only when necessary to respond to arguments raised for the first time in the reply brief. *See, e.g., N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC*, 200 F.Supp.2d 551, 554

4

(E.D.N.C. 2001); *Anderson v. Jordan*, No. 7:17-CV-112-BO, 2018 WL 2390582, at *3 (E.D.N.C. May 25, 2018); *Jefferson v. Biogen Idec Inc.*, No. 5:11-CV-237-F, 2012 WL 3629219, at *4 (E.D.N.C. Aug. 22, 2012) ("[C]ourts generally allow a party to file a surreply 'only when fairness dictates based on new arguments raised in the previous reply.'") (citation omitted).

Although it is not entirely clear that Defendant raised new legal or factual issues in its reply brief, considering the Plaintiff's *pro se* status, the court finds it in the interest of justice to grant Plaintiff's motion and consider the surreply in its analysis of Defendant's motion to compel arbitration.

## IV.  Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, embodies the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and allows parties to agree to arbitrate as an effective and cost-efficient means to resolve disputes. The FAA requires a district court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration" once a party to the arbitration agreement moves the court for a stay. 9 U.S.C. § 3.

> This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301-02 (2010) (compelling arbitration is appropriate under the FAA only when there is "a judicial conclusion" that there is a validly formed, express agreement to arbitrate).

When faced with a motion to compel arbitration, the court analyzes two "gateway matter[s]." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2006). First, the court must

5

determine "whether the parties are bound by a given arbitration clause." *Id.* at 84; *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (court must determine whether "a valid agreement to arbitrate exists between the parties"). Second, if the court concludes there is such an agreement, the court next examines "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84; *see also Phillips*, 173 F.3d at 938 (the court also asks whether "the specific dispute falls within the substantive scope of that agreement.").

The burden lies on the movant to demonstrate, *inter alia*, "a written agreement that includes an arbitration provision which purports to cover the dispute[.]" *Adkins*, 303 F.3d at 500-01 (quotation marks and citation omitted). In examining a motion to compel arbitration, a district court may consider materials outside the pleadings, including the purported written agreement to arbitrate itself, to determine whether the parties agreed to arbitrate. *See Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). Furthermore, the court "accept[s] as true" the allegations in the complaint that "relate to the underlying dispute between the parties." *Id.* at 233 (citations omitted). If, however, the "'making of the arbitration agreement be in issue,' then 'the court shall proceed summarily to the trial thereof.'" *Id.* at 234 (quoting 9 U.S.C. § 4). The court is "obliged to conduct a trial" only "when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support thereof,'" under a summary judgment standard. *Id.* (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)).

When a proponent of an arbitration agreement offers credible, admissible evidence to support a finding of an agreement to arbitrate, the opponent cannot rely on mere unawareness of whether it had made an arbitration agreement. *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d

6

258, 264 (M.D.N.C. 2016) (citing *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)). In disputed cases, the party opposing arbitration must unequivocally deny that there was an arbitration agreement and produce evidence to substantiate the denial. *Id.* (citing *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001)). This burden on the opponent arises, however, only after the proponent produces credible, admissible evidence that satisfies the court of the existence of an arbitration agreement. *See id.* (citing 9 U.S.C. § 4).

In this case, no party disputes that Defendant and Plaintiff's company, Cook Hospitality LLC, entered into a valid and binding contract titled, Rewards Network Receivables Purchase and Marketing Agreement ("Purchase Agreement"). *See* DE 29-1; *see also* Resp. ("admitting" Defendant's contention in the motion that "Cook Hospitality entered into [the Purchase Agreement] on June 19, 2019"), DE 21. The Purchase Agreement contains the following "Arbitration Agreement":

> **25. Arbitration Agreement.** Unless prohibited by federal law, you and we each shall have the option to require any claim or dispute relating in any way to this Agreement or the parties' dealings with one another ("**Claim**"), except for a Claim concerning the validity, scope or enforceability of this Arbitration Agreement, to be resolved through BINDING INDIVIDUAL ARBITRATION. This Arbitration Agreement involves interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("**FAA**"), and not by state law.

DE 29-1 at ¶ 25. The clause proceeds to explain additional terms and waivers and grants the Plaintiff the "right to reject this arbitration agreement" within thirty days after he signed the Purchase Agreement.[1] *See id.* Plaintiff also does not dispute that he executed a Personal Liability Agreement & Consumer Report Authorization ("Liability Agreement"), which incorporates by reference several sections of the Purchase Agreement, including the arbitration clause at issue in this matter. *See* DE 29-2.

Plaintiff argues that by refusing his requests to arbitrate issues that arose prior to this

---

[1] Plaintiff does not argue that he rejected the Arbitration Agreement at any time after signing the Purchase Agreement.

litigation regarding the Purchase Agreement, Defendant "breached the arbitration portion of the agreement . . . and therefore cannot maintain this as part of their agreement here and now." Resp. at ¶ 4. The court construes the pro se Plaintiff's response as a contention that his refusal to comply with the Arbitration Agreement is excused by Defendant's previous refusal to abide by the agreement upon Plaintiff's requests.[2] Plaintiff cites as support for his contention the Eleventh Circuit's opinion in *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016); however, that case analyzed whether a binding arbitration agreement actually arose between the parties. *See id.* at 1329-30. Here, the question is whether a party must be compelled to comply with an existing arbitration agreement previously breached by the other party.

By its terms, the FAA's saving clause allows courts to refuse to enforce arbitration agreements only "upon such grounds as exist at law or in equity for the revocation of any contract." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622, 200 L. Ed. 2d 889 (2018). Thus, the FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility, LLC v.*

---

[2] Plaintiff also argues generally that he "disputes the material agreements made in this agreement and the manner in which the transactions has [sic] been engaged in by the Defendant – thereby disputing the agreement in full." Resp. ¶ 3. Notably, unlike his argument regarding the Arbitration Agreement, Plaintiff does not identify these "material agreements" or "transactions." Nevertheless, if an arbitration agreement is valid, any disputes regarding other terms of the agreement are to be resolved by an arbitrator. *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012) ("when parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a federal or state court. For these purposes, an arbitration provision is severable from the remainder of the contract, and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.") (citations and quotation marks omitted). In accordance with *Howard*, the Arbitration Agreement here excepts from mandatory arbitration "a Claim concerning the validity, scope, or enforceability of this Arbitration Agreement." DE 29-1 at ¶ 25.

8

*Concepcion*, 563 U.S. 333, 339 (2011). The inquiry as to whether an arbitration agreement is invalid is "highly circumscribed," and "the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." *Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 653 (E.D.N.C. 2014) (quoting *Phillips*, 173 F.3d at 938).

As set forth above, Plaintiff does not argue that Defendant engaged in fraud or duress in the formation of the Arbitration Agreement, nor does he claim that the agreement is unconscionable either as stated or as applied. Plaintiff may argue that the law of North Carolina would govern whether the Arbitration Agreement is invalid (*see id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) and *Tanglewood Land Co., Inc. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655 (1980))), and under North Carolina law, "[a]s a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further." *Cf. Piascik v. Biomass Controls PBC*, No. 5:20-CV-00026-FL, 2020 WL 2735385, at *8 (E.D.N.C. May 26, 2020) (citing *McClure Lumber Co. v. Helmsman Const., Inc.*, 160 N.C. App. 190, 198, 585 S.E.2d 234 (2003)) (finding that a breach of a provision *separate* from the arbitration provision did not excuse non-performance under the arbitration provision). However, even if this "general rule" were applicable as a contract defense under *Concepcion*, the court finds that it serves, in this case, as a form of "equitable estoppel" that is not contemplated by *Concepcion* and its progeny. Plaintiff does not dispute that he, on "numerous" occasions, sought arbitration of the issues raised in the Complaint. His only objection now is one of timing; Defendant did not engage in arbitration then so it should not be able to engage in arbitration now.

A court in this district recently addressed whether an "estoppel" argument may invalidate an arbitration provision. In *Piascik, supra*, the court rejected an argument that a breach of an

9

employment agreement's provision, which was separate from the arbitration provision, served to invalidate the arbitration provision. 2020 WL 2735385, at *8. The court cited the Supreme Court's opinion in *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010), for the propositions that "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract" and "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate" contained within the contract. *Id.* In so finding, the court noted "there is no allegation that defendants breached the terms of the arbitration agreement, such that they would be estopped from relying upon its terms" and cited *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012) as authority that is different but sufficiently analogous to lend support. *Id.*

In *Rota-McLarty*, the Fourth Circuit addressed whether a party "waived" its right to enforce an arbitration agreement. *Id.* at 702. Finding the district court "applied the wrong law," the court noted that "[u]nder the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'" *Id.* (quoting 9 U.S.C. § 3).

> This principle of "default" is akin to waiver, but not identical. Unlike some waiver doctrines, "the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred," and the party opposing arbitration bears a heavy burden to prove default.
>
> Generally, a litigant defaults on its right to invoke the FAA where it "'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" "Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." The dispositive determination is whether the opposing party has suffered actual prejudice.

*Id.* (citations omitted). In this case, the Plaintiff has not argued, and the court does not find, that Defendant delayed or otherwise prejudiced Plaintiff by engaging in pretrial activity inconsistent

10

with an intent to arbitrate. In fact, the record reflects that the present motion was filed in response to the operative pleading, the parties have agreed to wait until resolution of the pending motions before commencing discovery, and consequently, Magistrate Judge Robert T. Numbers, II has temporarily stayed discovery in this case. *See* DE 26, 28. The court finds the holding in *Rota-McLarty* does not apply to this case.

Having determined that the Arbitration Agreement was properly formed and executed by the parties in this case, and mindful of the strong public policy favoring arbitration when the parties agree to it, the court will not invalidate the Arbitration Agreement based on an estoppel argument that has been neither considered nor approved under prevailing law. Therefore, Defendant has met its burden to show that "a valid agreement to arbitrate exists between the parties."[3]

Defendant must also demonstrate that the "arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84; *see also Phillips*, 173 F.3d at 938 (the court also asks whether "the specific dispute falls within the substantive scope of that agreement."). Here, the question is easily resolved; Plaintiff concedes in the Complaint that "in an effort to resolve the matter[s]," including Defendant's withdrawals from Plaintiff's accounts and Defendant's lien on Plaintiff's assets, he "offered a settlement and arbitration," but Defendant declined and "engaged a collections agency to harass Plaintiff." Compl. ¶¶ 9-15. The court finds all of these issues arise from the Purchase Agreement and/or the "parties' dealings with one another." DE 29-1 at ¶ 25. Plaintiff argues in his response brief that "Defendants [sic] have [sic] engaged in numerous violations outside of the agreement that are not suitable for adjudication in any forum except for a court of law," but he fails to identify these "violations" in either the

---

[3] In fact, in the operative pleading, Plaintiff implies his agreement that the Purchase Agreement is valid by alleging that Defendant breached the Purchase Agreement by withdrawing funds from his bank accounts, placing a lien on his assets, and engaging a collections agency to "harass" him. Compl. ¶¶ 9-15, DE 1-1.

Complaint or his briefing. *See* Compl. at DE 1-1, Resp. at DE 21, Surreply at DE 24-2. Accordingly, the court concludes Defendant has met its burden to demonstrate the current dispute falls within the substantive scope of the Arbitration Agreement.

**V.     Conclusion**

The court finds the Plaintiff has failed to demonstrate the court's lack of subject-matter jurisdiction in this case and, thus, his motion to remand is DENIED. The court finds the interests of justice support GRANTING the Plaintiff's motion for leave to file a surreply and accepts as filed the Surreply located at DE 24-2. Finally, the court concludes that Defendant has met its burdens to show that the Arbitration Agreement set forth in the Purchase Agreement is valid and that the current dispute falls within the scope of the Arbitration Agreement; consequently, Defendant's motion to compel arbitration is GRANTED. The proceedings of this case are STAYED pending disposition by arbitration. The parties are DIRECTED to proceed through the arbitration process in accordance with the terms of the Arbitration Agreement and to file a joint status report within ninety days of the date of this order, every ninety days thereafter, and within fourteen days after completion of arbitration, providing a summary of the status of arbitration proceedings.

SO ORDERED this 12th day of May, 2021.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE